In re Terry Recee FOWLER, Debtor.

Mary C. WALKER, Trustee, Plaintiff,

v.

Malcolm N. ELAM and Terry Recee
Fowler, Defendants.

Bankruptcy No. 95–33244.
Adv. No. 96–3074.

United States Bankruptcy Court,
E.D. Tennessee.

Oct. 10, 1996.

Walker & Walker, P.C. John A. Walker, Jr., Knoxville, TN, for Plaintiff.

Egerton, McAfee, Armistead & Davis, P.C., Stephen A. McSween, Knoxville, TN, for Defendant Malcolm N. Elam.

RICHARD S. STAIR, Jr., Chief Judge.

The court has before it cross-motions for summary judgment. The Plaintiff, Chapter 7 Trustee Mary C. Walker, filed a Motion for Summary Judgment on August 13, 1996. The Defendant, Malcolm N. Elam (Defendant), filed a Motion for Summary Judgment on September 3, 1996. The motions and responses are supported by documents and affidavits executed by the Defendant and Steve R. York, an acquaintance of the Debtor.

The Trustee commenced this adversary proceeding on March 27, 1996, with the filing of a Complaint to Avoid Interests, for Declaratory Judgment, and to Sell Interests (Complaint). The Trustee seeks a determination that two tracts of land in Anderson County, Tennessee, a .23 acre tract designated as 121 Jonathan Lane and a .17 acre tract designated as 124 Wainwright Road, are property of the estate and that the Trustee has full power and authority to sell and convey them free and clear of any interests of the Defendant. The Trustee further seeks, to the extent that the Defendant asserts an interest in the properties, to avoid such interest under 11 U.S.C.A. § 544 (West 1993) and that such interest be preserved for the benefit of the estate under 11 U.S.C.A. § 551 (West 1993).[1] The Defendant Terry Recee Fowler (Debtor) failed to answer the Complaint or otherwise defend. The Trustee filed a Motion for Judgment by Default against the Debtor on May 1, 1996, and, subsequent to a hearing held on May 23, 1996, the court entered a Default Judgment

against the Debtor on May 31, 1996, declaring that the Jonathan Lane and Wainwright Road properties are property of the estate and not property of the Debtor. The default Judgment was entered without an evidentiary hearing.

The Defendant filed an Answer, Crossclaim and Counterclaim of Malcolm N. Elam (Answer) on June 14, 1996, seeking, *inter alia*, an order granting the two Deeds of Trust priority over the claims of the Trustee and the Debtor. The Trustee filed an Answer to Counterclaim on June 20, 1996. On August 2, 1996, the court entered an Order dismissing the Defendant's cross-claim against the Debtor pursuant to a Notice of Dismissal of Cross–Claim filed by the Defendant on July 30, 1996.

Pursuant to Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding through Fed.R.Bankr.P. 7056, summary judgment is available only when a party is entitled to a judgment as a matter of law and when, after consideration of the evidence presented by the pleadings, affidavits, answers to interrogatories, and depositions in a light most favorable to the nonmoving party, there remain no genuine issues of material fact. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The factual dispute must be genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989).

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (K), (N) (West 1993).

I

The facts giving rise to the Trustee's action are undisputed. The Defendant was the owner of the Jonathan Lane property (Jonathan Property) which he orally agreed to sell to the Debtor for $15,000.00. The Defendant agreed to finance $12,500.00 of the purchase

---

1. The Trustee's request that the Defendant's interest, upon avoidance, be preserved for the benefit of the estate is unnecessary. Section 551 provides that a transfer avoided under § 544 "is preserved for the benefit of the estate...." 11

U.S.C.A. § 551 (West 1993). Accordingly, a transfer avoided under § 544 is automatically preserved for the benefit of the estate. *See* 4 Collier on Bankruptcy ¶ 551.01 (15th ed. 1996).

price so long as the financing was secured by a Deed of Trust constituting a valid and perfected first lien on the property. To accomplish these ends, the Defendant hired an attorney to prepare and register the necessary documents and close the transaction. On August 22, 1995, the Defendant executed a Warranty Deed (Jonathan Deed) conveying the Jonathan Property to the Debtor. The Defendant signed the Jonathan Deed in his attorney's office and left it with his attorney on condition that it not be delivered to the Debtor or to the Register's office for registration until a promissory note for the balance of the purchase price and a Deed of Trust securing the same were executed by the Debtor and the Deed of Trust recorded simultaneously with the Jonathan Deed. That same day, the Debtor executed a promissory note (Jonathan Note) and a Deed of Trust (Jonathan Trust Deed) in favor of the Defendant, securing the balance of the purchase price. Unknown to the Defendant, either his attorney or one of his attorney's employees thereafter delivered both the unregistered Jonathan Deed and the unregistered Jonathan Trust Deed to the Debtor. The Debtor never registered these deeds.

The Defendant was also the owner of the Wainwright Road property (Wainwright Property). Prior to December 5, 1995, the date the Debtor commenced his bankruptcy case, the Defendant orally agreed to sell the Wainwright Property to the Debtor for $16,000.00. He agreed to finance $15,000.00 of the purchase price so long as the financing was secured by a Deed of Trust constituting a valid and perfected first lien on the property. Unaware that the Jonathan Deed and Jonathan Trust Deed had not been registered, the Defendant retained the same attorney to prepare and record the necessary documents and close the transaction.

In August 1995, Steve R. York (York) borrowed $1,000.00 and gave it to the Debtor to use as a down payment on the Wainwright Property. It was York's intention that he and the Debtor would take title to the Wainwright Property jointly. The Debtor later showed York a receipt signed by the Defendant indicating that he had received the $1,000.00 down payment. At the time the

Debtor delivered this payment, all of the terms of sale including the purchase price, length of financing, interest rate, and method of calculating the monthly payments had been agreed upon by York, the Debtor, and the Defendant. The Debtor and York moved into the Wainwright Property in August 1995. The Debtor lived there continuously until June 1996.

On December 5, 1995, the Debtor filed a voluntary petition under Chapter 7. On December 14, 1995, the Defendant executed a Warranty Deed (Wainwright Deed) conveying the Wainwright Property to the Debtor. The Defendant signed the Wainwright Deed in his attorney's office and left it with his attorney on condition that it not be delivered to the Debtor or to the Register's office for registration until a promissory note for the balance of the purchase price and a Deed of Trust securing the same were executed by the Debtor and the Deed of Trust registered simultaneously with the Wainwright Deed. That same day, the Debtor executed a promissory note (Wainwright Note) and a Deed of Trust (Wainwright Trust Deed) in favor of the Defendant, securing the balance of the purchase price. Unknown to the Defendant, either his attorney or one of his attorney's employees thereafter delivered both the unregistered Wainwright Deed and the unregistered Wainwright Trust Deed to the Debtor. The Debtor never registered these deeds.

The Debtor did not list either the Jonathan or Wainwright Properties in his schedules. Nevertheless, the Trustee discovered the existence of the Jonathan and Wainwright Deeds and obtained possession of them from the Debtor. Aware that the Debtor still owed a balance on the Jonathan and Wainwright Notes, the Trustee registered both the Jonathan and Wainwright Deeds in the Register's Office for Anderson County on March 22, 1996. The Trustee never asked the Debtor for the Jonathan or Wainwright Trust Deeds and they remain unregistered. Both are in the possession of the Defendant at the present time.

## II

The Trustee seeks a determination that the Jonathan and Wainwright Properties are

property of the estate. Property of the estate is defined by § 541, which provides in material part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

11 U.S.C.A. § 541 (West 1993 & Supp.1996).

■ In Tennessee, an unregistered deed is valid and enforceable as between the parties to the instrument.[2] The registration of a deed serves only "to protect the grantee against the grantor's creditors and purchasers from him without actual notice of the deed." *Hinton v. Robinson,* 364 S.W.2d 97, 100 (Tenn.Ct.App.1962). Thus, the Debtor became the owner of the Jonathan Property upon transfer of the Jonathan Deed, even though the deed was not recorded until March 22, 1996. Therefore, upon the Debtor's filing of his Chapter 7 petition on December 5, 1995, the Jonathan Property became property of the estate under § 541(a)(1) because it was owned by the Debtor at that time.

■ The Trustee argues that the Wainwright Property is also property of the estate because the Debtor was the equitable owner of the property when he filed his Chapter 7 petition. There is no dispute that prior to the commencement of the Debtor's Chapter 7 case on December 5, 1995, the Debtor and Defendant had reached an oral agreement regarding the conveyance of the Wainwright Property. The theory advanced by the Plaintiff, known as the doctrine of equitable conversion, is stated as follows:

[A] contract for the sale of land operates as an equitable conversion and the vendee's interest under the contract becomes realty and the vendor's interest becomes personalty, and in equity the vendee is regarded as the owner, subject to liability for the unpaid price, and the vendor is regarded as holding only the legal title in trust for the vendee from the time a valid contract for the purchase of land is entered into.

*Campbell v. Miller,* 562 S.W.2d 827, 831–32 (Tenn.Ct.App.1977); *accord Bates v. Dennis,* 30 Tenn.App. 94, 203 S.W.2d 928, 930 (1946). The doctrine of equitable conversion operates only if there is a valid executory contract for the purchase of land between the vendor and purchaser. *Campbell,* 562 S.W.2d at 832; *Bates,* 203 S.W.2d at 930. Therefore, the court must determine whether a valid executory contract for the purchase of land existed between the Debtor and Defendant at the time of the bankruptcy filing.

■ The Defendant argues that the oral agreement between the parties was not a valid contract for the purchase of the Wainwright Property because it did not comply with the statute of frauds. All contracts within the purview of the statute of frauds must be memorialized in a writing that discloses, with reasonable certainty, the identity of the estate intended to be conveyed. *Baliles v. Cities Serv. Co.,* 578 S.W.2d 621, 623 (Tenn.1979). The statute of frauds governing the sale of real property is codified at Tenn.Code Ann. § 29–2–101(a)(4) (Supp. 1996), which states:

No action shall be brought:

. . . .

(4) Upon any contract for the sale of lands. . . .

. . . .

---

**2.** Tenn.Code Ann. § 66–24–101 (Supp.1996) provides that certain writings, including "deeds for absolute conveyance of any lands" (§ 66–24–101(4)) and "mortgages and deeds of trust" (§ 66–24–101(8)), "may be registered." Tenn. Code Ann. § 66–26–101 (1993) provides that: All of the instruments mentioned in § 66–24–101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided.

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

The purpose of the statute is to protect landowners from fraud, misunderstanding, and inconsiderate agreements. *Baliles,* 578 S.W.2d at 623; *Brandel v. Moore Mortgage and Inv. Co.,* 774 S.W.2d 600, 604 (Tenn.Ct. App.1989). An agreement within the scope of the statute is voidable at the election of either party to the contract. *Bailey v. Henry,* 125 Tenn. 390, 143 S.W. 1124, 1127 (1912).

The Trustee argues that the statute does not defeat the validity of the oral contract because she is not bringing an "action" upon the contract. She argues that she is merely referring to the existence of this contract. It is true that oral contracts for the sale of land are not void ab initio. *Id.* The statute merely states that no "action" may be brought upon such an oral contract. Although Tennessee courts have not elaborated upon the precise definition of an "action," one court has stated that "if either party disaffirms the oral contract, no action, either for specific performance or for damages, can be maintained on the contract." *Trew v. Ogle,* 767 S.W.2d 662, 664 (Tenn.Ct.App.1988). The concept of an "action" on the contract has been further described as follows:

> [I]f the party to an unexecuted oral contract who is sought to be charged with liability upon its obligations asserts the statute as a defense, it cannot form the basis of an action. So long as the contract is executory, no action can be maintained on the contract or for damages for its breach. It cannot be enforced in an action at law either directly or indirectly. . . .

73 Am.Jur.2d *Statute of Frauds* § 517 (1974) (footnotes omitted). Thus, the court must determine whether the Plaintiff's assertion of the doctrine of equitable conversion constitutes such an action on the contract.

■ The Trustee, as successor to the Debtor's pre-petition interests, seeks to establish an ownership interest in the Wainwright Property by virtue of the doctrine of equitable conversion. The operation of the doctrine of equitable conversion has been defined as follows: "An executory contract for the sale of land, *enforceable for or against the seller or buyer,* operates as an equitable conversion." 27A Am.Jur.2d *Equitable Conversion* § 10 (1996) (emphasis added) (footnotes omitted). Therefore, the doctrine of equitable conversion cannot be successfully asserted unless the executory contract is enforceable against the original parties. It is clear that if the statute of frauds rendered the oral contract unenforceable against the Debtor or the Defendant on December 5, 1995, the date the Debtor commenced his Chapter 7 case, no action could have been brought upon it. The Trustee will not be permitted to do indirectly what the Debtor could not have done directly because a Trustee assumes no greater rights under a contract than those held by the Debtor at the time the bankruptcy was filed. *See* 4 Collier on Bankruptcy ¶ 704.02 (15th ed. 1996).

■ There remains, however, an issue that neither of the parties addressed in their briefs. This issue is whether the statute of frauds applies when the party asserting it as a defense admits the existence and validity of the oral contract in his answer to the complaint. It has been noted that "a memorandum [that satisfies the statute of frauds] may be supplied by the written answer of a party to an oral contract which shows the existence of such contract in the face of the answer or other pleading in a judicial proceeding." *Love & Amos Coal Co. v. United Mine Workers of Am.,* 53 Tenn.App. 37, 378 S.W.2d 430, 439 (1963) (citing *Mills v. Mills,* 40 Tenn. 705, 711 (1859)). In the present case, the Plaintiff averred in Paragraph 7 of her Complaint that "Elam and Fowler had agreed that Elam would convey and Fowler would acquire [the Wainwright Property] prior to December 5, 1995." Paragraph 7 of the Defendant's Answer states:

> It is admitted that Elam and Fowler had, prior to December 5, 1995, orally agreed that Elam would convey and Fowler would acquire [the Wainwright Property] on certain terms and conditions including, without limitation, a condition precedent that the balance of the pur-

chase price unpaid at closing and financed by Elam would be secured by a Deed of Trust on [the Wainwright Property] executed by Fowler and recorded contemporaneously with the deed from Elam to Fowler so as to constitute a perfected first lien on [the Wainwright Property] in favor of Elam.

This admission, under the authority of *Love* and *Mills*, constitutes a written memorialization of the contract sufficient to satisfy the statute of frauds under Tenn.Code Ann. § 29–2–101(a)(4). Being such, the contract is enforceable against the Defendant. Therefore, the court finds that the oral agreement to sell the Wainwright Property constitutes a valid executory contract for the purchase of the Wainwright Property.

There being a valid contract for the purchase of the Wainwright Property, the court need only determine the time at which an equitable conversion could have occurred.

> [U]nless the sale or purchase contemplated is expressly directed to be made at a specified time in the future, or upon the happening of some particular event, which may or may not happen, the conversion takes place, in wills, as from the death of the testator; and in deeds, and other instruments inter vivos, as from the date of their execution.

*Wheless v. Wheless*, 92 Tenn. 293, 21 S.W. 595, 596 (1893). Therefore, absent any conditions upon the conveyance of the Wainwright Property, the conversion occurred on the date of execution of the prepetition oral contract for the purchase of the property. Accordingly, the Trustee argues that the Debtor obtained a prepetition interest in the Wainwright Property that is now property of the estate. The court disagrees.

It is clear that the oral agreement between the Defendant and the Debtor was conditional. The Defendant agreed to convey the property and finance the purchase price so long as the Debtor executed a Deed of Trust constituting a valid and perfected first lien on the property. The latter condition did not occur prior to the Debtor's bankruptcy filing. The Debtor did not execute the Wainwright Trust Deed until December 14, 1995, nine days after the commencement of his bankruptcy case. In discussing the time at which an equitable conversion occurs, the Tennessee Supreme Court has stated:

> "This, like all other questions of intention, must ultimately depend upon the provisions of the particular instrument. The instrument might in express terms contain an absolute direction to sell or to purchase at a specified future time; and *if it created a trust to sell upon the happening of a specified event, which might or might not happen, then the conversion would only take place from the time of the happening of that event,* but would take place when the event happened, exactly as though there had been an absolute direction to sell at that time."

*Bennett v. Gallaher,* 115 Tenn. 568, 92 S.W. 66, 67 (1906) (quoting 3 Pomeroy, Equity Jurisprudence ¶ 1162) (emphasis added). The court finds that the Debtor's execution of the Wainwright Trust Deed was a condition to the sale which "might or might not happen." In this case it did happen, but not until nine days after the Debtor filed his Chapter 7 petition. Therefore, the court concludes that an equitable conversion did not occur prior to December 5, 1995, and the Debtor did not possess an ownership interest in the Wainwright Property as of that date. Accordingly, the Wainwright Property is not property of the estate under § 541(a)(1).

The court is mindful that its determination that the Wainwright Property is not property of the estate conflicts with the Judgment by default entered against the Debtor on May 31, 1996, which recites that the Wainwright Property is property of the estate. As that Judgment was entered without the benefit of an evidentiary hearing and remains interlocutory, it will be modified to reflect the court's ruling as set forth in this Memorandum.[3]

---

**3.** Rule 54(b) of the Federal Rules of Civil Procedure, incorporated into Fed.R.Bankr.P. 7054(a), provides in material part:

> When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express

## III

Although the Jonathan Property is property of the estate under § 541(a), the Defendant still claims a lien against it by means of the Jonathan Trust Deed. The Trustee seeks to avoid this interest under § 544(a). Section 544(a), referred to as the "strong arm clause," provides as follows:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits

such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C.A. § 544(a) (West 1993). The Defendant argues that the Plaintiff cannot avoid the Jonathan Trust Deed under any of the subsections to § 544(a). The court will examine the applicability of two of these subsections, (a)(1) and (3), beginning with § 544(a)(3).

■■■■ In Tennessee, an unregistered deed of trust is null and void as to a bona fide purchaser from the maker.[4] Section 544(a)(3) provides a trustee with the rights and powers of a bona fide purchaser of real property from the debtor if a hypothetical buyer could have obtained the status of a bona fide purchaser at the time the bankruptcy was commenced. *Owen–Ames–Kimball Co. v. Michigan Lithographing Co. (In re Michigan Lithographing Co.)*, 997 F.2d 1158, 1159 (6th Cir.1993).[5] The definition of a bona fide purchaser is governed by state law. *Id.* Under Tennessee law, "[a] bona-fide [sic] purchaser is one who buys for a valuable consideration without knowledge or notice of facts material to the title." *Henderson v. Lawrence*, 212 Tenn. 247, 369 S.W.2d 553, 556 (1963). In general, there are two types of notice: actual and construc-

direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

*See Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir.1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders.") (citations omitted).

4. Tenn.Code Ann. § 66–26–103 (1993) provides:

Any of such instruments [identified in § 66–24–101] not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent

creditors of, or bona fide purchasers from, the makers without notice.

*See supra* n. 2.

5. Section 544(a) applies "without regard to any knowledge" that a trustee may have. Therefore, a trustee's actual knowledge of a claimed interest in the debtor's property is irrelevant when determining if the provisions of § 544(a)(3) apply. *Marshack v. Sauer (In re Palmer)*, 140 B.R. 765, 771 (Bankr.C.D.Cal.1992). Nevertheless, the same cannot be said in regard to constructive notice. Section 544(a) does not negate state law provisions that impute knowledge of claims against real property to a purchaser by means of constructive notice. *Fletcher Oil Co. v. Elm Lawn Cemetery Co. (In re Fletcher Oil Co.)*, 124 B.R. 501, 503 n. 4 (Bankr.E.D.Mich.1990); *Brown Family Farms, Inc. v. Brown (In re Brown Family Farms, Inc.)*, 80 B.R. 404, 408 (Bankr. N.D.Ohio 1987). The standard set forth in *Owen–Ames* incorporates both of these concepts by looking to the knowledge of a hypothetical purchaser.

tive. *Blevins v. Johnson County*, 746 S.W.2d 678, 682 (Tenn.1988). Constructive notice is imputed to a purchaser by operation of law as a result of the registration of an instrument. *Id.* at 682–83. Constructive notice that the grantor does not have record title constitutes a fact material to title that defeats the grantee's status as a bona fide purchaser. *See Hall v. Hall*, 604 S.W.2d 851, 853 (Tenn.1980).

The Defendant argues that the Trustee cannot avail herself of § 544(a)(3) because, at the time the Debtor commenced his Chapter 7 case, the Debtor was not the record owner of the Jonathan Property. The court agrees. The Jonathan Deed was not registered until March 22, 1996. On December 5, 1995, a hypothetical buyer would have been on constructive notice that the Debtor did not claim his title under a registered deed. Knowledge of such a material fact defeats the hypothetical buyer's status as a bona fide purchaser. *Id.* Accordingly, the Plaintiff cannot avail herself of § 544(a)(3) to avoid the Defendant's unregistered Jonathan Trust Deed.

 Section 544(a)(1) provides a trustee with the rights of a hypothetical judicial lien creditor at the time the debtor commenced the bankruptcy proceeding. Although it is federal law that endows the trustee with the status of a judicial lien creditor, it is state law that determines the legal effect of that status. *Waldschmidt v. Dennis (In re Muller)*, 185 B.R. 552, 554 (Bankr. M.D.Tenn.1995). Tennessee law provides that an unregistered deed of trust is null and void as to existing or subsequent creditors of the maker. Tenn.Code Ann. § 66–26–103 (1993); Tenn.Code Ann. § 66–26–101 (1993); Tenn.Code Ann. § 66–24–101(a)(8) (1996).[6] Therefore, if the holder of a security interest in the debtor's property fails to perfect that interest prior to the filing of the bankruptcy, the trustee can avoid that interest, reducing the holder to the status of an unsecured creditor. *See Waldschmidt*, 185 B.R. at 555.

The Jonathan Trust Deed was not registered as of the commencement of the Debtor's bankruptcy case on December 5, 1995.

However, on that same day the Trustee assumed the status of a judicial lien creditor under § 544(a)(1). As noted above, Tennessee law is clear that an unregistered trust deed is null and void as to a judicial lien creditor of the maker. The Trustee being a judicial lien creditor of the Debtor by virtue of § 544(a)(1), the court holds that the Jonathan Trust Deed is void under Tenn.Code Ann. § 66–26–103 (1993), reducing the Defendant to the status of an unsecured creditor.

The Defendant argues that the registration laws of Tennessee (Tenn.Code Ann. §§ 66–24–101 (1993 & Supp.1996), *et seq.*, and Tenn. Code Ann. §§ 66–26–101 (1993), *et seq.*) do not apply to the facts of this case. If correct, the effect would be to render the Plaintiff's status as a judicial lien creditor useless. As previously discussed, the legal effect of the strong arm clause is wholly dependent upon the rights conferred on the judicial lien creditor by state law. Tennessee Code Ann. §§ 66–24–101(a)(8) and 66–26–103 (1993 & Supp.1996), forming part of Tennessee's registration laws, dictate that the judicial lien creditor prevails over the holder of an unregistered deed of trust. Again, if these sections of the Tennessee Code are inapplicable to the facts of this case, then the Plaintiff's status as a judicial lien creditor under § 544(a)(1) is meaningless. In support of this proposition the Defendant cites *Leech v. Hillsman*, 76 Tenn. 747 (1882), and *Bryant v. Bank of Charleston*, 107 Tenn. 560, 64 S.W. 895 (1901).

In *Leech*, the owner of real property attempted to grant a mortgage in the property to secure the grantee from liability as a surety of the grantor. Instead, the grantor conveyed the property by means of a deed absolute. Nevertheless, the grantor retained possession of the property at all times. In time, the grantor paid off the debt secured by the intended mortgage. Yet, prior to reconveyance, a judgment creditor of the grantee levied upon the property. There being no registered lien on the property, the issue before the court was whether the judgment creditor of the grantee could obtain valid title to the property. The court re-

---

**6.** *See supra* n. 2 and 4.

ferred to the legal principle that a creditor takes no greater rights to a debtor's property than that which the debtor possessed. However, the court made it clear that this principle of law does not supersede the proper application of the registration laws. Nevertheless, the court did not believe that the registration laws applied to the facts of the case.

> These [registration laws] stand on a sound public policy, and the rights of the parties under them *are distinctly defined by the statutes creating them.*
>
> It is clear the language of our registration laws do not include nor control the question now before us. They only fix the rights, and give preference to existing or subsequent creditors or bona fide purchasers of, and *from the maker of the deed.* They do not profess to, nor do they in fact refer to, or regulate the rights of a creditor, as we have said, in a case like the present.

*Leech,* 76 Tenn. at 750 (emphasis added). Having disposed of the registration issue, the court held that the grantor possessed superior rights in the property where the parties intended to convey only a mortgage and the underlying debt had been paid.

In *Bryant,* a grantor of land conveyed the parcel to the grantee in exchange for four promissory notes. The parties intended the notes to be secured by a lien noted on the face of the deed. The draftsman of the deed omitted the lien. The notes were later assigned to the plaintiffs. Sometime thereafter, it was discovered that the deed had not been recorded and that it did not include the lien securing the notes. The plaintiffs and the grantee agreed that the deed should be modified to include the lien. The deed was taken to a draftsman to accomplish this task. The deed was then recorded without any further acknowledgment by the grantors. Prior to this modification of the deed, the defendant, a creditor of the grantee, obtained a decree against the grantee in the chancery court and levied on the property. The plaintiff commenced an action to prevent the defendant from proceeding to the execution of the decree. The issue before the court was whether the plaintiffs had a lien on the prop-

erty superior to the lien of the defendant acquired under its attachment. The court noted:

> [L]and held by an unregistered deed may be levied upon by execution and attachment creditors of the vendor and vendee respectively. But very different results follow in the two cases. As to the execution and attaching creditors *of the maker,* a deed is null and void for lack of registration, but it is otherwise as to those of the vendee. The rights of these creditors are not fixed by our registry acts, but depend upon rules established outside of and independent of these acts.... It is true that this alteration of the deed destroyed the efficacy of the former acknowledgment, and that without a new acknowledgment it was not entitled to be noted for registration; but, as before seen, this is immaterial so far as the creditors of the vendee are concerned.

*Bryant,* 64 S.W. at 896–97 (emphasis added).

As the Defendant states in his brief, the *Leech* and *Bryant* decisions "do no more than give effect to the plain meaning of Tenn. Code Ann. § 66–26–103." The court agrees. This is confirmed by the language used in *Leech.* The *Leech* court was not creating new law but instead believed that "the rights of the parties under [the registration laws] are distinctly defined by the statutes creating them." *Leech,* 76 Tenn. at 750. Therefore, the court must determine whether the registration laws are applicable to the facts before it.

The facts before this court present an application of the registration laws that is distinguishable from that of *Leech* and *Bryant.* Similar to these cases, there was a conveyance of a warranty deed to the Debtor. However, unlike *Leech* and *Bryant,* this case also involves the additional conveyance of an unregistered deed of trust. This distinction is critical since a trust deed involves an entirely different grantor than a warranty deed. This is especially important since the Plaintiff attempts to utilize the registration laws to avoid the Jonathan Trust Deed, as opposed to the warranty deed.

One must be careful to discern what "instrument" § 66–26–103 is being applied to.

Section 66–26–103 dictates that "[a]ny of such instruments" that are not registered are void as to "creditors of, or bona fide purchasers from, the makers without notice." The Defendant assumes that the applicable instrument is the warranty deed, of which the Debtor is the grantee. However, the Trustee is not seeking to avoid the Jonathan Deed under § 66–24–101(4). Instead, she seeks to avoid the Jonathan Trust Deed under § 66–24–101(a)(8). Incorporating the language of § 66–24–101(a)(8) into § 66–26–103, the latter section reads as follows:

> Any [deeds of trust of either real or personal property] not so proved, or acknowledged and registered, or noted for registration, shall be *null and void as to* existing or subsequent *creditors of,* or bona fide purchasers from, *the makers* without notice.

Tenn.Code Ann. § 66–26–103 (1993) (emphasis added). In this case, the Debtor was clearly the maker or grantor of the Jonathan Trust Deed, which recites in material part:

> FOR AND IN CONSIDERATION of One Dollar to him paid, and the other considerations herein provided the receipt of all of which are hereby acknowledged the Grantor(s), TERRY FOWLER of Anderson County, Tennessee, has (have) this day bargained and sold, and does (do) hereby transfer and convey to Steven R. Seivers of Knox County, Trustee, and his successors in trust, certain property in the State of Tennessee, and described as follows. . . .

The Trustee is a creditor of the Debtor by virtue of § 544(a)(1). Being a creditor of the grantor, the Trustee is able to avail herself of the Tennessee registration laws.

This conclusion simply comports with the language and purposes of the registration laws. Thus, in accordance with the mandate of *Leech* to allow the language of the registration laws to define the rights of the parties, this court finds that the registration laws are applicable to the Trustee's attempt to avoid the Jonathan Trust Deed because the Trustee is a creditor of the maker of this deed, the Debtor. Accordingly, the Defendant's security interest in the Jonathan Property is avoidable by the Trustee.

## IV

Given that the Defendant's security interest in the Jonathan Property is avoidable under § 544(a)(1), the Plaintiff seeks to preserve this interest for the benefit of the estate under § 551,[7] which provides:

> Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

11 U.S.C.A. § 551 (West 1993). This statute enables the bankruptcy estate to acquire the rights of the holder of an avoided lien so that junior lienholders do not benefit from the avoidance to the detriment of the estate. *In re Investors & Lenders, Ltd.,* 156 B.R. 145, 147–48 (Bankr.D.N.J.1993). However, the estate obtains no greater rights than the secured creditor possessed. *Barnett Bank v. Weitzner (In re Kavolchyck),* 164 B.R. 1018, 1024 (S.D.Fla.1994). Therefore, the preservation of an unperfected security interest will not enable the estate to defeat a secured creditor's perfected lien. *Id.* Accordingly, the Debtor's bankruptcy estate succeeds to the unperfected security interest of the Defendant in the Jonathan Property under § 551. Moreover, this unperfected security interest also becomes property of the estate pursuant to § 541(a)(4).

In summary, the court holds that the Jonathan Property is, and that the Wainwright Property is not, property of the estate under § 541(a)(1). Additionally, the Defendant's security interest in the Jonathan Property will be avoided pursuant to § 544(a)(1). This unperfected security interest is automatically preserved for the benefit of the estate pursuant to § 551 and becomes property of the estate under § 541(a)(4). The Trustee has full power and authority to sell and convey the Jonathan Property free of any interest of the Defendant. The Plaintiff's Motion for Summary Judgment will accordingly be granted as to the Jonathan Property and denied as to the Wainwright Property while

---

7. *See supra* n. 1.

the Defendant's Motion for Summary Judgment will be granted as to the Wainwright Property and denied as to the Jonathan Property. An appropriate judgment will be entered.

### JUDGMENT

For the reasons set forth in the Memorandum on Cross–Motions for Summary Judgment filed this date, it is ORDERED, ADJUDGED and DECREED as follows:

1. The Plaintiff's Motion for Summary Judgment filed August 13, 1996, is GRANTED to the extent the Plaintiff seeks a determination that real property located on Jonathan Lane in Anderson County, Tennessee, is property of the estate. The following described property is property of the estate and not property of the Defendant Malcolm N. Elam:

TRACT 59: SITUATED in the Second Civil District of Anderson County, Tennessee, within the City of Oak Ridge, bearing street address of 121 Jonathan Lane, and being more particularly described as follows:

DESIGNATED as Lot Number Twenty-eight (28) (containing 0.23 acres) on the plat of the entire City of Oak Ridge, Tennessee, Subdivision Plan, as shown on Block Plan SD B–8, prepared by Michael Baker, Jr., Inc., and recorded in Oak Ridge Plat Book No. 2, page 28, in the Register's Office of Anderson County, Tennessee.

2. The Plaintiff's Motion for Summary Judgment filed August 13, 1996, is DENIED to the extent the Plaintiff seeks a determination that real property located on Wainwright Road in Anderson County, Tennessee, is property of the estate. The following described property is not property of the estate but is property of the Defendant Terry Recee Fowler acquired subsequent to the commencement of his Chapter 7 case on December 5, 1995:

TRACT 18: Situated in the Second (Old Fourth) Civil District of Anderson County, Tennessee, in the City of Oak Ridge, bearing street address of 124 Wainwright Road, and being more particularly described as follows:

DESIGNATED as Lot Number Seventy–Three (73) (containing 0.17 acres) on the plat of the entire City of Oak Ridge, Tennessee, Subdivision Plan, as shown on Block Plan SD C–11, prepared by Michael Baker, Jr., Inc., and recorded in Oak Ridge Plat Book No. 1, page 58, in the Register's Office of Anderson County, Tennessee.

3. The Plaintiff's Motion for Summary Judgment filed August 13, 1996, is GRANTED to the extent the Plaintiff seeks to avoid the lien of the Defendant Malcolm N. Elam's unregistered Deed of Trust encumbering the Jonathan Lane property described in paragraph 1 of this Judgment executed by the Defendant Terry Recee Fowler on August 22, 1995. Defendant Malcolm N. Elam's lien is avoided pursuant to 11 U.S.C.A. § 544(a)(1) (West 1993), and the Plaintiff is authorized to sell the Jonathan Lane property free and clear of the Defendant Malcolm N. Elam's avoided lien.

4. The Plaintiff's Motion for Summary Judgment filed August 13, 1996, is DENIED to the extent the Plaintiff seeks to avoid the lien of the Defendant Malcolm N. Elam in the Wainwright Road property described in paragraph 2 of this Judgment.

5. The Defendant Malcolm N. Elam's Motion for Summary Judgment filed September 3, 1996, is GRANTED to the extent this Defendant seeks a determination that his interest in the Wainwright Road property described in paragraph 2 of this Judgment is superior to the interest of the Plaintiff. The Plaintiff has no interest in the Wainwright Road property.

6. The Defendant Malcolm N. Elam's Motion for Summary Judgment filed September 3, 1996, is DENIED to the extent this Defendant seeks a determination that his interest in the Jonathan Lane property described in paragraph 1 of this Judgment is superior to the interest of the Plaintiff. The Plaintiff's interest in the Jonathan Lane property is superior to any interest claimed by the Defendant Malcolm N. Elam.

7. The Judgment entered by default against the Defendant Terry Recee Fowler

on May 31, 1996, declaring the Wainwright Road property described in paragraph 2 of this Judgment to be property of the estate is amended to conform to the court's Memorandum on Cross–Motions for Summary Judgment filed this date. The Wainwright Road property is not property of the estate but is property of the Defendant Terry Recee Fowler.